**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GARY Z. LYON, | ) | CASE NO.: 2:08 CV 464 |
| | ) | |
| Plaintiff, | ) | JUDGE FROST |
| | ) | |
| vs. | ) | MAJ. JUDGE KING |
| | ) | |
| YELLOW TRANSPORTATION, INC., | ) | **DEFENDANT TEAMSTERS** |
| et al., | ) | **LOCAL UNION NO. 413'S** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| Defendants. | ) | **MOTION FOR SANCTIONS** |

**A. DEFENDANTS' SPECIFICATION OF PLAINTIFFS' OFFENDING PLEADINGS**

Plaintiff's Complaint contains several baseless averments which are belied by inarguably clear legal authority, as set forth in the attached Motion and Notice of Motion with Memorandum in Support, which is incorporated herein by reference and restated herein. Further, it is telling that even though the National Labor Relations Board dismissed all duty of fair representation claims against Local 413 filed by Mr. Harmon for Plaintiff that they pursued these claims anyway. While Plaintiff sought to stay these Court proceedings pending the investigation of the NLRB into the merits of his allegations against the Union regarding a breach of the duty of fair representation (Doc. 24), when the NLRB dismissed his claims after a full and fair investigation (Doc. 24) Plaintiff nevertheless proceeded with this case to full-blown discovery, even though he knew that neither the Union nor the Company ever interpreted the so-called "Columbus

Seniority Practice" as he did. Plaintiff, along with his attorney, has knowingly presented claims that are unmeritorious under traditional labor law. Quite frankly, the clear example is set forth in Plaintiff's "Consolidated Memorandum Contra Motions for Summary Judgment Filed by Defendants Yellow Transportation, Inc. and Teamsters Local Union No. 413 on February 13, 2009. With respect to the argument that the Union violated the duty of fair representation by withdrawing the grievance prior to arbitration proceedings before the Ohio Joint State Grievance Committee ("OJSGC"), Plaintiff's attorney expressly wrote on page 15 of his brief:

> …If the grievance had no merit, the OJSGC would have dismissed it in short order. There was no downside to the proceeding. The decision to withdraw the grievance thus irrational on its face…

As this Court is well aware, the United States Supreme Court held more than forty years ago in Vaca v. Sipes, 386 U.S. 171, 191-198 (1967) to the contrary:

> Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement. In L. M. R. A. § 203 (d), 61 Stat. 154, 29 U.S.C § 173 (d), Congress declared that "Final adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-

consuming step in the grievance procedures. Moreover, both sides are assured that similar complaints will be treated consistently, and major problem areas in the interpretation of the collective bargaining contract can be isolated and perhaps resolved. And finally, the settlement process furthers the interest of the union as statutory agent and as coauthor of the bargaining agreement in representing the employees in the enforcement of that agreement. See Cox, Rights Under a Labor Agreement, 69 Harv. L. Rev. 601 (1956).

If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. See NLRB v. Acme Industrial Co., 385 U.S. 432, 438; Ross, Distressed Grievance Procedures and Their Rehabilitation, in Labor Arbitration and Industrial Change, Proceedings of the 16th Annual Meeting, National Academy of Arbitrators 104 (1963). It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L. M. R. A. § 203 (d), *supra*, if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration. For these reasons, we conclude that a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration. (footnote omitted).

Quite frankly, it is apparent that Plaintiff's counsel has prosecuted this case under a theory that the Union at base was bound to provide him an arbitration -a "day in court"- though that clearly and emphatically is not the case. Legions of cases t hat are the progeny of Vaca, establish that very proposition. Moreover, Plaintiff's counsel has not given any notice to the Court that he wants to seek to overturn this landmark case on the duty of fair representation. Theoretically under Rule 11 a litigant could even seek to overturn Marbury v. Madison, 5 U.S. (Cranch 1) 137 (1803) as unrealistic as that may be, but here Plaintiff's counsel has not done that at all. Instead, he has argued against the basic proposition of the landmark case in labor law under the duty of fair representation without providing any argument for "overturning" it. The natural conclusion is that he did not even read that case and has subjected Defendants to useless discovery and the drafting of unnecessary dispositive motions because he did not want to put the time and effort into educating himself about the basics of federal labor law that constitute his claim. Under Rule 11, it is not okay to "sue first and ask questions later."

Tellingly, in his own Motion for Summary Judgment, Liability Only, filed on February 13, 2009, Plaintiff did not cite a single case whatsoever! He simply waited for Defendants to do the research and educate him.[1] But even though they expended an enormous amount of time because of his baseless allegations and laid out for the Court

[1] This is prohibited by Rule 11. See, Fish v. Fla. Dept. of Corr., 2007 WL 4365727, at *2 ( "It appears to this Court that Plaintiff's counsel attempted to the [sic] 'pass the buck' of legal research, first to a labor consultant and then to defense counsel. Therefore, the Court finds it appropriate to return said 'buck' to Plaintiff's counsel and require that he pay defense counsel's reasonable expenses incurred in defending this action after October 10, 2007.")(attached).

why Plaintiff's claims had no merit, including, of course, citing Vaca, supra, Plaintiff proceeded with his unsupported theories in any event.

Indeed, as this Court is well aware, Plaintiff has engaged the Defendants in the entirely intrusive process of examining a union member's physical condition which has necessitated costly and cumbersome protective provisions. Yet, without any basis whatsoever, Plaintiff has intruded into this individual's privacy based on a patently incorrect legal theory and without securing one iota of expert testimony to interpret the physical condition of the union member sufficient to analyze Plaintiff's claim. All that one can conclude is that Plaintiff has known that he has no case and has not invested in any such evidence but has pursued the action nonetheless. This is compounded by the fact that Plaintiff's counsel is an experienced Plaintiff's attorney that assuredly "knows better."

Indeed, Plaintiff inexplicably never deposed the witness who actually met with him and investigated the case face-to-face – Union Business Agent Jeff Kestner. How in the world can you not do this?

And in the final analysis, Plaintiff has claimed that if the Union had done its job and investigated his grievance, then the OJSGC would assuredly have ruled in his favor. Yet, Plaintiff never even sought any discovery from the OJSGC about its prior arbitration decisions and precedents on the National Master Freight Agreement ("NMFA"), the Columbus Seniority Practice, or other Changes of Operation. Instead of pursuing any probative evidence, he and his counsel throughout this case have chosen to press ahead

solely with the uniformed, unsound and unsupported opinions of what union member Lyon thinks is "fair to him." He has known that no medical transfer has ever been required to serve a year-and-day for decades under the Columbus Seniority Practice – and he knows that that is binding now as if carved in stone under past practice - but he has hired a lawyer to sue the union anyway to get something because he was laid off.

Lastly, the Union concurs with Yellow's Motion for Leave to File Sur-Reply *Instanter* to Plaintiff's Reply in Support to his Motion for Summary Judgment. In the last document on dipositive motions Plaintiff filed new evidence never produced in discovery in a last ditch effort to try to concoct a genuine issue of material fact. The Court should disregard that evidence to be sure. But the Court should note that his is just one more example of how this meritless action has been tried.

Clearly in this case, Mr. Harmon and his client have crossed the line by far. Mr. Harmon is aware of Local Rule 2 on Civility in this court requiring counsel in the interest of professionalism from taking "extreme or marginally defensible legal positions" and how this "brings disrepute on the legal profession." Trying to get the Court to overlook the basic holding of Vaca, supra as his basic theory in the case is the last straw for the Union. Accordingly, the Union respectfully requests an award of sanctions under Rule 11, the statute, and under the inherent power of the Court to control the proceedings before it.

**B. ARGUMENT OF LAW FOR RULE 11 SANCTIONS**

Rule 11 of the Federal Rules of Civil Procedure, as amended, states in pertinent part:

> **Rule 11. Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions**
>
> (a) Signature.
>
> Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of attorney or party.
>
> (b) Representations to Court.
>
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely

> to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> (c) Sanctions.
>
> If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> (1) How Initiated.
>
> (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

In the Sixth Circuit, courts have repeatedly held in duty of fair representation cases that both the attorney and the litigant have a continuing obligation to review and re-evaluate their pleadings, motions, and other papers, and upon learning that these papers may be without merit, the appropriate course is to dismiss the action. Herron v. Jupiter Transp. Co., 858 F.2d 332, 336 (6th Cir. 1988), Costanzo v. Plain Dealer Publishing, 715

F. Supp 1380 (N.D. Ohio 1989). As noted most recently in Kassab v. Aetna Industries, Inc., 54 Fed.Appx. 819, 823-824, 2002 WL 31870319 (6th Cir. 2002) (attached as Exhibit 1 to Motion and Notice of Motion), in order for a plaintiff to prevail against a union on a duty of fair representation claim:

> …he must first prove a breach of the duty of fair representation. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "The relevant issue in assessing a Union's judgment is not whether it acted incorrectly, but whether it acted in bad faith." Anderson v. Ideal Basic Indust., 804 F.2d 950, 953 (6th Cir.1986). "[M]ere negligence or mistaken judgment is insufficient to establish a breach of the union's duty." Poole v. Budd Co., 706 F.2d 181, 183 (6th Cir.1983). Rather, a breach of duty may be established by a showing that the union "handle[d] a grievance in a 'perfunctory' manner, with caprice or without rational explanation." Ibid.

In affirming an award of sanctions under Rule 11, the Kassab court noted that plaintiff's attorney's "failure to understand the basic principles of labor law may have rendered filing the complaint and all subsequent motions sanctionable. It certainly rendered Becker's motion to sustain the action against Aetna alone after the dismissal of the UAW defendants sanctionable. In response to this baseless motion, Aetna was required to expend its legal resources to give Becker remedial lessons in labor law. The district court had a sound basis for awarding Rule 11 sanctions." Id. at 826.

Here, in briefing a case before the Court contra Vaca, supra, Plaintiff and his counsel have engaged in such sanctionable conduct as many decisions support. For

pleadings or motions have been held to be unwarranted by existing law if contrary to settled precedent. See, e.g., Prof'l Mgmt. Assocs., Inc. v. KPMG LLP, 345 F.3d 1030, 1032-33 (8th Cir. 2003) (remanding for imposition of sanctions where "[g]iven the well-settled law of res judicata under the circumstances," counsel should have known second lawsuit was barred); Hernandez v. Joliet Police Dep't, 197 F.3d 256, 264-65 (7th Cir. 1999) (affirming Rule 11 sanctions where plaintiff's attorney overlooked defendant's "obvious" 11th Amendment defense and failed to voluntarily dismiss defendant after it was brought to his attention); Chambers v. American Trans Air, Inc., 17 F.3d 998, 1006 (7th Cir. 1994) (affirming Rule 11 sanctions where complaint requested liquidated and exemplary damages under Title VII at a time when such damages clearly were not allowed); Smith v. Blue Cross & Blue Shield United, 959 F.2d 655, 659 (7th Cir. 1992) (upholding sanctions where suit had "no chance of success under existing precedent"); McGregor v. Board of Comm'rs, 956 F.2d 1017, 1022 (11th Cir. 1992) (sanctions imposed where settled Florida law on at-will employment contracts made plaintiff's constitutional claim frivolous); Norris v. Grosvenor Mktg. Ltd., 803 F.2d 1281, 1288 (2d Cir. 1986); Stites v. IRS, 793 F.2d 618, 621 (5th Cir. 1986); Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985); Westmoreland v. CBS, Inc., 770 F.2d 1168, 1176 (D.C. Cir. 1985); Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985) (Rule 11 is violated when "it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands."), modified, 821 F.2d 121 (2d Cir. 1987); Elsman

v. Standard Fed. Bank, 238 F. Supp. 2d 903, 909 (E.D. Mich. 2003) (plaintiff's "complaint is sanctionable because it contains summary assertions without including or explaining citations to any legal authority to support his contentions"); Todd v. City of Natchitoches, 238 F. Supp. 2d 793, 801 (W.D. La. 2002) (sanctions imposed where plaintiff "offers no case law to support [his claim], and the case law that is cited is frequently irrelevant or misconstrued"); Truesdell v. Southern California Permanente Medical Group, 209 F.R.D. 169, 177 (C.D. Cal. 2002) (sanctions imposed where attorney presented "absolutely no authority" undermining a clear line of precedent); Goldstein v. Gordon, No. 3:00-CV-0022-P, 2002 U.S. Dist. LEXIS 3348 (N.D. Tex. Feb. 27, 2002) (sanctions appropriate for tortured reading of the law and resultant misrepresentation to court); Burekovitch v. Hertz, 2001 U.S. Dist. LEXIS 12173, at *36 (E.D. N.Y. July 24, 2001) (sanctions imposed where "plaintiff failed to identify or discuss any authority" that suggested his claim was permissible under the Uniform Standards Act or Delaware law); Noll v. Peterson, 2001 U.S. Dist. LEXIS 9683 (D. Idaho June 15, 2001), adopting Magistrate's Report and Opinion, 2001 U.S. Dist. LEXIS 8191, at *23 (D. Idaho May 14, 2001) ("In light of this clearly established law, the Court concludes that Plaintiffs' claims . . .are frivolous and without merit"); Williams v. Wilkinson, 122 F. Supp. 2d 894, 903 (S.D. Ohio 2000) (sanctioning attorney for filing motion to dismiss that failed to cite or distinguish adverse controlling circuit precedent); Mitchell Plastics, Inc. v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, 946 F. Supp. 401, 407 (W.D. Pa. 1996) ("Rather than a hurdle, which, at least in sports, runners almost always reach the

other side of, binding, recent authority is better viewed as a wall. The complaining party must be prepared to show us exactly where the door is and the key to unlock it"); Knestrick v. IBM, 945 F. Supp. 1080, 1083 (E.D. Mich. 1996) (attorney's failure to uncover contrary case law unreasonable where the court easily found contrary cases "simply by running an exceedingly straightforward search in the 'Westlaw' electronic database"); Knipe v. Skinner, 146 F.R.D. 58, 61 (N.D.N.Y. 1993) (sanctions imposed for complaint based on legal arguments that had been soundly rejected by four courts of appeal because attorney neither tried to distinguish those cases nor advanced reasonable argument for modification or reversal of existing law), remanded, 19 F.3d 72 (2d Cir. 1994); United Pac. Ins. Co. v. Durbano Constr. Co., 144 F.R.D. 402, 406 (D. Utah 1992) (where defendants advanced argument in contravention of well established and universally accepted jurisdictional rule, court found that claim was frivolous); Villar v. Crowley Maritime Corp., 780 F. Supp. 1467, 1487 (S.D. Tex. 1992) (acceptance of plaintiff's argument would have required the court to go against almost every case that has ever considered the Erie Doctrine), aff'd, 990 F.2d 1489 (5th Cir. 1993); Sheldon v. McGraw-Hill, Inc., 777 F. Supp. 1369, 1373 (E.D. Mich. 1991) (plaintiff's brief entirely misstated Michigan law regarding at-will contracts); Route Messenger Servs., Inc. v. Holt-Dow, Inc., 139 F.R.D. 311, 312 (S.D.N.Y. 1991) (plaintiff violated Rule 11 by relying on a statute that was repealed eight years prior); Kelly v. Mercoid Corp., 776 F. Supp. 1246, 1258 (N.D. Ill. 1991) (where plaintiff alleged violation of the Fourth Amendment based on private employer's urinalysis testing, court found failure to perform

cursory research which would have revealed that only government action or state action may be challenged under Fourth Amendment was sanctionable); Collins Dev. Corp. v. Marsh & McLennan, Inc., No. 90 Civ. 4675, 1991 U.S. Dist. LEXIS 9735, at **13-15 (S.D.N.Y. July 17, 1991) (filing of complaint was sanctionable when statute of limitations had expired); Marley v. Wright, 137 F.R.D. 359, 363 (W.D. Okla. 1991) (civil rights suit against judges was sanctionable because of well-settled precedent of absolute judicial immunity), aff'd without op., 968 F.2d 20 (10th Cir. 1992); Lapine v. Boehm, No. 89 C 8420, 1990 U.S. Dist. LEXIS 12313, at *6 (N.D. Ill., Sept. 18, 1990) (sanctions imposed where mere reading of relevant case law would have disclosed that motion to reconsider is improper way to raise new arguments which could and should have been brought in briefing the original motion); Mooneyham v. SmithKline & French Lab., No. G89-4039, 1990 U.S. Dist. LEXIS 6158, at *22 (W.D. Mich. May 18, 1990) (RICO claim not well grounded in law where plaintiffs' attorney stated, at a hearing before a magistrate, "we didn't know how solid we were on the RICO claim, but that we wanted some discovery before we knew exactly where we stood"), aff'd without op., 931 F.2d 56 (6th Cir. 1991). See also, Senese v. Chicago Area I.B. of T. Pension Fund, 237 F.3d 819, 824-25 (7th Cir. 2001) (remanding for imposition of sanctions in ERISA claim where party knew that he did not meet plan requirements).

Even if the Court were to grant Plaintiff and his counsel the generosity of pursing his claims through discovery just to see "if anything turned up," it is clear that after discovery was complete in this case, voluntary dismissal was warranted and dispositive

motions were unnecessary. Parrish v. Freight Consol. Serv., Inc., 1987 Westlaw 10578, *6 (N.D. Ill. 1987), unreported (attached hereto); Parrish v. Freight Consol. Serv., Inc., 1988 WL 4935 (N.D.Ill. 1988), unreported (attached hereto). Dragging on litigation without any authority and without following the basic rules is sanctionable.

Objectively, Plaintiff and his counsel were well aware, on the record presented, that this case never should have been presented to the Court for dispositive motions. Defendant has heretofore defended this case and borne great expense because of Plaintiff's positions. But bearing the cost of clearly meritless positions for a clearly meritless grievance is not what federal court litigation is supposed to be about.

Respectfully submitted,

***FAULKNER, MUSKOVITZ & PHILLIPS, LLP***, by

s/ D. James Petroff
George H. Faulkner (0031582)
D. James Petroff (0042476), Trial Attorney
Faulkner, Muskovitz & Phillips, LLP
820 West Superior Avenue, Ninth Floor
Cleveland, Ohio 44113-1800
(216) 781-3600
(216) 781-8839 fax
Email: faulkner@fmplaw.com
Email: petroff@fmplaw.com

Attorneys for Defendant Teamsters Local 413

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 6th day of April 2009, the foregoing MEMORANDUM IN SUPPORT DEFENDANT TEAMSTERS LOCAL UNION NO. 413'S MOTION FOR SANCTIONS was filed electronically using the Court's electronic case filing system. Parties may access it there.

s/ D. James Petroff