# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

GARY Z. LYON,

        Plaintiff,

    v.                              **Case No. 2:08-cv-464**
                                         **JUDGE GREGORY L. FROST**

YELLOW TRANSPORTATION, INC., et al.,    **Magistrate Judge Norah McCann King**

        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the following sets of filings:

(1) a motion to strike (Doc. # 45) filed by Plaintiff, Gary Z. Lyon, a memorandum in opposition (Doc. # 47) filed by Defendant Teamsters Local Union No. 413 ("the Union"), a memorandum in opposition (Doc. # 48) filed by Yellow Transportation, Inc. ("Yellow Transportation"), and a consolidated reply memorandum (Doc. # 50) filed by Lyon;

(2) a motion for an extension of time in which to file its summary judgment motion (Doc. # 49) filed by Yellow transportation and a memorandum in opposition (Doc. # 50) filed by Lyon;

(3) a motion for summary judgment (Doc. # 39) filed by Yellow Transportation, a consolidated memorandum in opposition (Doc. # 52) filed by Lyon, and a reply memorandum (Doc. # 62) filed by Yellow Transportation;

(4) a motion for partial summary judgment (Doc. # 40) filed by Lyon, a memorandum in opposition (Doc. # 56) filed by Yellow Transportation, a memorandum in opposition (Doc. # 58) filed by the Union, a consolidated reply memorandum (Doc. # 59) filed by Lyon, and a sur-reply memorandum (Doc. # 72) filed by Yellow Transportation;

(5) a motion for summary judgment (Doc. # 41) filed by the Union, a consolidated

memorandum in opposition (Doc. # 52) filed by Lyon and its supplemental evidence (Doc. # 54), and a reply memorandum (Doc. # 64) filed by the Union; and

(6) a motion for sanctions (Doc. # 73) filed by the Union, a memorandum in opposition (Doc. # 78) filed by Lyon, and a reply memorandum (Doc. # 79) filed by the Union.

For the reasons that follows, this Court **DENIES** Lyon's motion to strike (Doc. # 45), **DENIES AS MOOT** Yellow Transportation's motion for an extension (Doc. # 49), **GRANTS** Yellow Transportation's motion for summary judgment (Doc. # 39), **DENIES** Lyon's motion for partial summary judgment (Doc. # 40), **GRANTS** the Union's motion for summary judgment (Doc. # 41), and **GRANTS IN PART** and **DENIES IN PART** the Union's motion for sanctions (Doc. # 73).

## I.  Background

Yellow Transportation is a motor carrier company that provides transportation services in the national and international freight transportation markets.  The company previously entered into a collective bargaining agreement ("CBA") with the Union, which represents workers such as Plaintiff, Gary Z. Lyon, a truck driver employed by Yellow Transportation.  Prior to being laid off, Lyon worked out of Yellow Transportation's Columbus, Ohio terminal, which is one of several terminals the company has in North America.

In July 2007, Yellow Transportation presented a "change of operations" heard before a Change of Operations Committee, a subset of the National Grievance Committee established pursuant to the CBA.  Under the CBA, the Change of Operations Committee, comprised of representatives from Yellow Transportation and the Union, considers and issues a decision on any change of operations sought, which occurs when Yellow Transportation seeks to alter the

flow of freight, close a terminal, or downsize a terminal.  On July 17, 2009, the Change of

Operations Committee approved a modified change of operations regarding the downsizing of

the Columbus, Ohio terminal, the shifting of Columbus work to other regional terminals, and the

elimination of sixty-six Columbus positions.  Fifteen terminals gained additional positions as a

result of the approved change, including a Yellow Transportation terminal located in Atlanta,

Georgia.

Some Columbus terminal workers were able to transfer to other terminals.  As part of the

decision approving the change of operations, the Change of Operations Committee stated that

employee bidding on positions at other terminals would proceed according to current bidding

seniority.  This left intact a process described as the Columbus Seniority Practice.[1]  Under the

agreement between Yellow Transportation and the Union, there are two distinct seniority boards,

one for drivers designated as "road drivers" and one for drivers designated as "city drivers."  A

road driver drives from terminal to terminal, typically across state lines, and does not perform

dock work or yard work.  The road driver's function is to transport the freight, and terminal

workers process the freight and the trailer.  In contrast, a city driver delivers freight to and picks

freight up from customers within their particular route area (*e.g.*, the City of Columbus).  The

city driver loads and unloads freight at customer locations and must be qualified to perform dock

work and yard work both at customer locations and at a terminal.

The drivers in each category are identified by seniority on a list, or roster, maintained for

---

[1]  As explained by Rodney Boothe, Yellow transportation's Labor Relations Manager, the Columbus Seniority Practice is the shorthand name used by the parties for the more cumbersome "Columbus Joint Area Committee Rules to Operate Local Cartage and Over-the-Road Separate Seniority Boards Agreement."  (Doc. # 39-2, Boothe Aff. ¶ 12.)

3

that category.  These lists are posted approximately every six months, and employees can object

to their ranking within a specified time period.  The ranking is important because a driver's route

assignments and ability to avoid being laid off depends on seniority.

A driver can transfer between the seniority lists, designated as "boards," based on either a

medical transfer or a voluntary transfer.  Under a medical transfer, a driver transfers from one

board to the other if he or she is medically disqualified from being able to serve on the board to

which he or she is assigned.  Section 3 of the Columbus Seniority Practice in effect at the time of

the events involved in this action describes the medial transfer process as follows:

> A.  An employee unable to perform his regular duties due to proven
> physical disability or disqualification but who is qualified and
> physically able to perform the regular duties on the other board
> may upon written request with copy to the Employer and the Local
> Union transfer to the other board with terminal seniority.
>
> B.  The physical fitness of an employee who proposes to change from
> one board to the other shall be determined by agreement of a
> company designated physician and the employee's personal
> physician.  If they do not agree, they shall jointly select a third
> doctor ad the parties shall be bound by his decision.  The decision
> of the doctor(s) shall be in writing and shall state the reason for the
> disqualification in layman's language.
>
> C.  The physical fitness of an employee having transferred under the
> procedure set forth in 3B (above) shall be re-evaluated no later
> than six (6) months following his/her date of transfer and, if not
> sooner qualified for return to the board from which he transferred,
> at each twelve (12) month period thereafter unless otherwise
> mutually agreed by the parties hereto and reduced to writing.
>
> D.  Should such employee subsequently become physically qualified,
> he must return to the board from which he transferred.  In the event
> of a dispute regarding the employee's physical qualifications, the
> procedure set forth in 3B shall be invoked.

(Doc. # 39-6, at 1-2.)  Although there has since been an amendment to the medical transfer

4

process, the amendment is immaterial in this case.

As noted, there is also a voluntary transfer process.  Section 4 of the relevant Columbus

Seniority Practice describes the process for this type of transfer as follows:

> A.    An employee <u>voluntarily</u> transferring from one board to the other, as provided for in Rule 1 hereof, shall work as the junior active employee on the active road seniority list or as the junior guaranteed employee on the active local cartage seniority list, <u>said seniority lists including current probationary employee(s) whom may subsequently establish a prior seniority date</u> in accordance with the applicable contract provisions, for one year and a day after which period he may exercise his terminal seniority for all purposes subject to (1) or (2) below.  Employees voluntarily transferring from one board to another are subject to subsequent layoff in line of his/her seniority on the board to which he/she transferred provided, however, that if as a result of pending layoff such transferred employee would no longer maintain 90% status he must return to the road board for the duration of such situation.
>
> (1)    Employee completing 'year and a day' on the road board moves to his seniority position on the <u>extra board</u> until the next road bid when he may bid his full terminal seniority.
>
> (2)    Employee completing 'year and a day' on city board shall exercise his <u>terminal</u> seniority on the next bid opening to which his seniority entitles him.
>
> B.    It must be clearly understood by any employee intending to transfer and such employee transferring from one board to another, as described in Paragraph 1 hereof, must remain on the board to which he transfers for a minimum period of one year except as governed by the provisions of 4A hereof.

(Doc. # 39-6, at 2.)

These types of transfers are relevant because, after the change in operations was

approved for the Columbus terminal, employees could bid to transfer to another terminal.  Under

this bidding process, an employee with the highest seniority was given first choice at transferring

to another terminal or could elect to pass on bidding and remain attached to the Columbus

terminal.  The employee could also place a "hold" on a different terminal, which meant that the
employee would obtain a position at that terminal if Yellow Transportation created a position at
the terminal within 120 days, the period of time specified by the approved change of operations.

One such employee who opted to bid on transferring to the Atlanta terminal was D.S.
Miller.  Miller originally began working for Yellow Transportation as a combined
dockworker/city driver in 1986, but injured his left shoulder and arm in 1993.  In late 1995, he
was diagnosed with a torn rotator cuff.  Miller saw orthopedic specialist Robert Turner, M.D., at
Yellow Transportation's direction, and the doctor restricted Miller from performing repetitive
lifting.  Accordingly, on November 16, 1995, Miller effectuated a medical transfer and became a
road driver, a position that Turner had cleared him to work.  Miller moved to the road driver
seniority board, which ranked his seniority based on his December 1, 1986 initial date of hire.
Consequently, on July 17, 2007, Miller was number 51 on the road seniority board and was able
to successfully bid on one of two positions available at the Atlanta terminal during the bid
process.

Lyon also wanted to bid on a position in Atlanta.  He originally began working for
Yellow Transportation as a road driver in August 1999 and, at the time of the July 2007 change
of operations, was ranked as number 126 on the road driver seniority board.  By the time his
number was reached during the bid process, the two available Atlanta positions had already been
filled.  Lyon therefore placed a hold on Atlanta and elected to be placed on lay-off status.
Thereafter, Lyon filed a grievance on August 9, 2007, which stated:[2]

I was unable to move on [the change of operations].  Yellow Transportation is

---

[2] The Court has altered capitalization and spelling.

> moving Mr. D.S. Miller to Atlanta, GA. (ATL).  Mr. D.S. Miller has no road
> seniority[,] he is working on the road because of a Local 413 medical agreement
> with his local cartage seniority.  He is unable to take the local agreement to ATL.
> Copy of local seniority list and medical agreement is attached. – Remedy – only
> road drivers with road seniority be allowed to follow road work.  All road work
> be offered to me with my road seniority.

(Doc. # 39-14.)  The grievance form included the statement that "[b]y presenting the grievance,

the employee grants to the Union complete authority to present, negotiate and bargain regarding

this grievance and agrees to be bound by such disposition of the grievance as may be made or

agreed to by the Union or its delegated representatives."  (*Id.*)  Lyon signed the grievance form.

(*Id.*)

Despite being assessed as presenting no violation of the CBA by Wilson Raver, the Vice

President of Local 413, Lyon's grievance was processed.  The Union's Business Agent, Jeff

Kestner, handled the initial processing of the grievance and met with Lyon concerning his

grievance.  After being heard at the local level, which resulted in no decision, this grievance was

referred to the Ohio Joint State Grievance Committee.  The Union then withdrew the grievance,

which by now was being handled by Raver.

Following the withdrawal, Lyon filed the instant lawsuit on May 13, 2008.  In his

complaint, Lyon asserts claims for breach of the CBA against Yellow Transportation, breach of

the duty of fair representation against the Union, a hybrid claim against both defendants under §

301 of the LMRA, and an intentional tort claim alleging malice and bad faith against the Union.

(Doc. # 2 ¶¶ 33-52.)  All of the parties have filed motions for summary judgment in whole or in

part (Docs. # 39, 40, 41), while Plaintiff has filed a related motion to strike (Doc. # 45) and the

Union has filed a motion for sanctions (Doc. # 73).  Briefing has closed on all of the motions,

which are ripe for disposition.

7

## II.  Motion to Strike & Motion for Extension of Time

On November 25, 2008, the Magistrate Judge assigned to this action filed a Protective

Order that, among other things, provided for confidential material to be filed under seal.  (Doc. #

33.)  Thereafter, Yellow Transportation filed its motion for summary judgment on February 13,

2009.  (Doc. # 39.)  Yellow Transportation did not file the motion and its memorandum in

support under seal, despite the fact that the briefing referenced confidential information.  Review

of the docket indicates that Yellow Transportation filed its briefing via the Court's electronic

filing system at 4:04 p.m.

Similarly, the Union filed its motion for summary judgment on that same day and also

not under seal.  (Doc. # 41.)  The Union's briefing provided that, in addition to its setting forth

some additional background facts, the Union "has reviewed the detailed recitation of the facts in

Yellow's Memorandum in Support of its Motion For Summary Judgment (ECF Doc. No. 39) and

for the sake of brevity will incorporate by reference those facts as if fully rewritten herein."

(Doc. # 41-2, at 8.)  Review of the docket indicates that the Union filed its briefing via the

Court's electronic filing system at 6:21 p.m.  Both motions were eventually placed under seal to

prevent any inadvertent disclosure of any confidential information.

Lyon has moved to strike Defendants' motions for summary judgment on the grounds

that they were untimely.  (Doc. # 45.)  He argues that because the Clerk's office closes its doors

at 4:00 p.m., and because filings under seal must be filed in person, Defendants failed to meet the

February 13, 2009 deadline for filing dispositive motions.  Lyon also argues that the motion

should be stricken because Defendants violated the Protective Order.  In his memorandum in

support, he asks that the Court "strike both such Motions from the public record and . . . prohibit

8

the Defendants from re-filing the same as sealed documents after the non-extendible deadline set" by this Court.  (Doc. # 45, at 5.)

The Union opposes the motion to strike.  It argues that because nowhere in its summary judgment motion did it reference medical information falling within the Protective Order, it was not required to file its briefing under seal.  Rather, the Union explains, it simply incorporated by reference Yellow Transportation's recitation of the facts and mentioned the fact of (without divulging the nature of) a driver's medical condition.  If, however, the Court deems the circumstances presented above problematic, then the Union requests that it be permitted to file its motion late.  The Union has failed to file a motion presenting that request.  The Union has, however, presented an argument as to how Lyon's certificate of service related to his own motion for summary judgment is purportedly false, which the Union suggests means that Lyon's motion could be stricken and sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 could be appropriate.

Yellow Transportation also opposes the motion to strike.  The company asserts that the error in filing was inadvertent and that Lyon has failed to offer any authority to support his position.  Yellow Transportation also argues that Lyon failed to demonstrate in his motion that any prejudice resulted from the filing error and that this Court should adhere to its preference to decide matters on the merits rather than on procedural technicalities.  As an apparent precaution, the company has also moved for an extension of time to file its summary judgment motion. (Doc. # 49.)

Continuing the dysfunctional dynamic of the parties' professional relationship, Lyon then argues in his reply memorandum that not only should this Court strike Yellow Transportation's

9

motion for summary judgment, but the Court should also order Yellow Transportation to pay Lyon's attorney's fees in regard to the motion to strike and impose a "substantial fine" against Yellow Transportation.  (Doc. # 50, at 5.)  Lyon then disputes the Union's characterization of its briefing, arguing that incorporation is the same as doing an act, and requests the imposition of "robust sanctions" against the Union (*Id.* at 8) , presumably the same "robust sanctions" he seeks against Yellow Transportation (*Id.* at 6).

The foregoing debate is one of the bigger wastes of this Court's time since the undersigned became a federal judge.  Such tit-for-tat grumbling by parties in which cross-accusations fly with reckless abandon do little to advance the interests of their clients, to inform the Court of the issues and the law, and to honor the dignity of the practice of law.

Because this Court recognizes that the parties are fondly concerned with nuances, the Court will explain how such nuances inform its disposition of the parties' debate:

(1) This Court denies Lyon's motion to strike because it is wholly devoid of authority as required by the Local Civil Rules.  The Local Rules provide that "[a]ll Motions . . . shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation of authorities relied upon."  S.D. Ohio Civ. R. 7.2(a)(1).  Lyon's motion to strike and memorandum in support include no authority supporting his contention that the striking of motions based on the timelines upon which he relies is warranted.  Nor does his motion to strike and memorandum in support direct this Court to any authority supporting his proposition that the striking of a filing is an appropriate remedy for the failure to comply with a protective order.  And Lyon's motion to strike and memorandum in support fail to offer any authority indicating that incorporation such as that done by the Union here can itself be violative

10

of a protective order so as to warrant the striking of a filing.

Such a noncompliant, unsupported motion warrants denial.  *See Jones v. Brunsman*, No. 2:07-cv-0254, 2008 WL 397466, at *1 (S.D. Ohio Feb. 11, 2008) (denying motion for a pretrial conference for failing to comply with Local Rule 7.2(a)(1)); *Miller v. Burrows Paper Corp.*, No. 2:06-cv-790, 2007 WL 1098541, at *2 (S.D. Ohio Apr. 12, 2007) (denying motion in part for failing to comply with Local Rule 7.2(a)(1)); *Gregg v. SBC/Ameritech*, Nos. 2:02-CV-980, 2:02-CV-1232, & 2:03-CV-636, 2005 WL 1514114, at *6 (S.D. Ohio June 24, 2005) (denying motion to strike in part for failure to comply with Local Rule 7.2(a)(1)); *Logan Farms v. HBH, Inc. DE*, 282 F. Supp. 2d 776, 796 (S.D. Ohio 2003) (denying motions to transfer that failed to comply with Local Rule 7.2(a)(1)).  The fact that Lyon's reply memorandum directs this Court to some case law does not salvage the deficiency surrounding his motion and its memorandum in support; Local Rule 7.2(a)(1) does not permit a party to file a motion to strike and then explain the legal basis for such action after the opposing side has used its opportunity to respond.

(2) The Court notes that Lyon has improperly requested monetary sanctions.  Neither the motion to strike nor its memorandum in support contain this request.  Rather, Lyon made the request in his reply memorandum, filed after Defendants had their only opportunity to respond to the motion without obtaining leave of Court to file a sur-reply.  *See* S.D. Ohio Civ. R. 7.2(a)(2).  Such litigation by ambush violates the spirit of the rules and is frowned upon; it is also unsuccessful when a party seeks monetary sanctions for contempt but fails to ask for them in his actual motion and memorandum in support.

(3) The Court realizes that the Union's moot request for an extension, if necessary, is actually a request for leave to file instanter that the Union has failed to make by way of a motion.

11

Embedding a request within a memorandum in opposition is not filing a motion, and a request for an extension or leave to file of the sort involved here must be made by motion.  *See* S.D. Ohio Civ. R. 6.1(b)

(4) The Court recognizes that Yellow Transportation's counsel were apparently simply careless in fulfilling their duties to their client to file the briefing properly and in fulfilling their duties to this Court and the Magistrate Judge by obeying a court order.  Such carelessness led to an embarrassing error.  But the error has been corrected, and there is no evidence whatsoever that any actual disclosure of confidential material occurred.  Counsel are admonished for their carelessness and should avoid such carelessness in the future, when sanctions may indeed be warranted depending upon the specific circumstances involved.

In light of the foregoing, this Court in its discretion declines to strike Defendants' motions for summary judgment.  The Court therefore **DENIES** Lyon's motion to strike (Doc. # 45) and **DENIES AS MOOT** Yellow Transportation's motion for an extension of time (Doc. # 49).

### III.  Motions for Summary Judgment

### A.  Standard Involved

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. Rule. Civ. P. 56(c).  In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir.

2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

　　However, "[a] district court is not … obligated to wade through and search the entire

record for some specific facts that might support the nonmoving party's claims." *Id.* (citing

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled

to rely, in determining whether a genuine issue of material fact exists on a particular issue, only

upon those portions of the verified pleadings, depositions, answers to interrogatories and

admissions on file, together with any affidavits submitted, specifically called to its attention by

the parties."  *Id.*; Fed. R. Civ. P. 56(c).

### B.  Yellow Transportation's Motion

　　Yellow Transportation moves for summary judgment on the grounds that because it did

not breach the CBA, Lyon's hybrid § 301 claim for such a breach and his analogous or

contingent claims must fail.  This Court agrees.

　　Section 301 of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce as defined in this
> chapter, or between any such labor organizations, may be brought in any district
> court of the United States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  This statute "governs claims founded directly on rights created by collective

bargaining agreements, and also claims substantially dependent on analysis of a collective

bargaining agreement."  *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1036 (6th Cir.

13

1989) (citing *Caterpillar Inc. v. Williams*, 182 U.S. 386 (1987)), *cert. denied* 495 U.S. 946

(1990).  *See also Aloisi v. Lockheed Martin Energy Sys.*, 321 F.3d 551, 556 (6th Cir. 2003)

(citing *Martin v. Lake County Sewer Co., Inc.*, 269 F.3d 673 (6th Cir. 2001); *Occidental Chem.*

*Corp. v. Int'l Chem. Workers Union*, 853 F.2d 1310 (6th Cir. 1988); *LaBuhn v. Bulkmatic*

*Transp. Co.*, 865 F.2d 119, 120 (7th Cir. 1988)).

> The Sixth Circuit has explained a hybrid § 301 claim as follows:

> "A hybrid section 301 action involves two constituent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573 583 (6th Cir. 1994) (citation omitted).  The two claims are "inextricably interdependent."  *DelCostello v. Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (internal quotation marks and citation omitted).  Unless a plaintiff "demonstrates both violations, he cannot succeed against either party."  *Bagsby v. Lewis Bros. Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987) (emphasis omitted).

*Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (footnote omitted).

Further, as the appellate court has noted, although a plaintiff need not sue both an employer and

the union, " 'the case he must prove is the same whether he sues one, the other, or both.' "

*Garrison*, 334 F.3d at 538 n.8 (quoting *DelCostello*, 462 U.S. at 165).   *See also Kassab v. Aetna*

*Indus., Inc.*, 54 F. App'x 819, 825-26 (6th Cir. 2002); *Ely v. Newell-Rubbermaid, Inc.*, 50 F.

App'x 681, 686 (6th Cir. 2002).  Lyon must therefore prove both that Yellow Transportation

breached the collective bargaining agreement and that the Union breached its duty of fair

representation.  *See Hayes v. UPS*, No. 08-5852, 2009 WL 1405185, at *5 (6th Cir. Mar. 19,

2009); *Higgins v. Int'l Union, Sec., Police, Fire Prof'ls of Am. (SPFPA)*, 398 F.3d 384, 387 (6th

Cir. 2005) (quoting *Bagsby v. Lewis Bros., Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir.1987));

*Alford v. General Motors Corp.*, 926 F.2d 528, 530-31 (6th Cir. 1991).

As Yellow Transportation notes, Lyon attacks the propriety of Miller's initial transfer on the grounds that Miller could not perform dock work, but could serve as a city driver.  Even assuming *arguendo* that Lyon's own conclusory interpretations of Miller's medical records possess some validity, this Court is nonetheless cognizant that Lyon fails to credit that city drivers *are* required to be able to perform dock work as a regular and essential function of their position, while road drivers are not required to be able to perform dock work as a regular and essential function of that position.  Yellow Transportation Labor Relations Manager Rodney Boothe testified to these facts in his January 29, 2009 affidavit, stating:

> 14.  City drivers typically deliver freight to and pick freight up from various customers throughout the City of Columbus or in their particular route area.

> 15.  City drivers are responsible for loading and unloading freight while at customer locations.

> 16.  While dockworkers are primarily responsible for loading and unloading freight at the Terminal, city drivers are expected to be able to load and unload their own freight while at the Terminal.

> 17.  Likewise, although yard workers, or hostlers, are primarily responsible for dropping and hooking the trailers to the trucks, city drivers are expected to be able to perform this task as well.

> 18.  Road drivers generally drive from terminal to terminal; they do no[t] load or unload freight.

> 19.  Road drivers do not, and are not expected to, perform dock work or yard work.

(Doc. # 39-2, Boothe Aff. ¶¶ 14-19.)  Based on this evidence, Lyon's conclusion that Miller could not properly move from being a city driver to a road driver based on a medical transfer is without a factual basis.  The 1995 restriction by Dr. Turner that Miller not perform repetitive lifting, a function constituting dock work, precluded Miller's service as a city driver.  Dr.

Turner's analysis carried through to his January 2007 evaluation of Miller.

Lyon disagrees with Boothe's factual account set forth above.  Assuming that the Lyon affidavit attached to his reply memorandum in support of his motion for partial summary judgment can inform analysis of Yellow Transportation's motion, this Court nonetheless finds no genuine issue of material fact precluding summary judgment here.[3]  (Doc. # 59-2.)  In his affidavit, Lyon states that he has reviewed Boothe's affidavit and that he disagrees with the statements that road drivers do not load or unload freight and do not perform dock work.  (*Id.* ¶¶ 3-5.)  He indicates that, as a road driver, he has been told to unload freight "several times," and that the ability to do so is a requirement of the job.  (*Id.* ¶ 5.)  Thus, Lyon concludes, "Mr. Boothe's statement . . . that, 'Road drivers do not, and are not expected to perform . . . yard work[,'] however, is pro[b]ably false."  (*Id.* ¶ 7.)  Lyon then describes two procedures, a drop and a hook, which are the processes by which a trailer is disconnected and connected from a tractor, respectively.  (*Id.* ¶¶ 8-9.)  Lyon states that these are the most physically demanding procedures required of road or city drivers and that "[m]any road drivers, myself included, are routinely instructed to perform drop and hooks at the Yellow terminals at Baltimore Maryland, Charleston West Virginia, Chicago Illinois (rail yards only), Ft. Wayne Indiana, Lima Ohio, Mansfield Ohio, Washington, D.C. and Zanesville Ohio, to name a few."  (*Id.* ¶¶ 10-11 (11 is misnumbered as 9).)

To the extent Lyon's affidavit presents factual disagreements, they are ultimately

---

[3]  Even if the Court were to find that such a factual dispute existed, the dispute would only target Lyon's "independent" breach of contract claim against Yellow Transportation.  It could not preclude summary judgment on the hybrid § 301 claim, which as will be discussed fails in part due to no breach by the Union, and it cannot salvage the remaining claims directed solely against the Union.

immaterial to whether Yellow Transportation breached the contract. First, Miller's medical restriction was not to perform repetitive lifting, which routine loading and unloading of freight as a city driver would involve. The fact that Lyon states that he has been instructed to unload freight "several times" and that "[m]any road drivers" have been similarly instructed does not create a factual issue as to whether Miller was appropriately disqualified so as to qualify for a medical transfer. (*Id.* ¶ 5.) Several times does not equal routine lifting. Second, there is no medical basis to conclude that Miller cannot perform the hook and drop yard work procedures without aggravating his existing injury, and there is no factual basis to conclude that Miller ever performed a drop or hook, much less that he falls within the category of the "[m]any road drivers . . . *routinely* instructed to perform drop and hooks." (*Id.* ¶ 11 (11 is misnumbered as 9) (emphasis added).) Accordingly, Lyon has failed to present a genuine issue of material fact.

At first blush, Lyon fares better when he next argues that Yellow Transportation repeatedly breached the CBA when it failed to have Miller re-evaluated every 12 months pursuant to § 3(C) of the Columbus Seniority Practice. Yellow Transportation initially responds to this argument by asserting that Lyon has waived any right to challenge Miller's seniority and his ranking in comparison to Miller's ranking. This Court need not resolve the waiver issue, however, because Lyon's analysis fails to present a breach that leads to the injury he claims.

Miller was evaluated in January 2007 and that evaluation precluded his serving as a city driver through the July 2007 bid process. Any error on the part of Yellow Transportation in not having Miller evaluated every 12 months is not relevant because it was this most recent evaluation that continued Miller's service as a road driver and preserved his ranking above Lyon on the road driver seniority board. Seven months prior to the change of operations, Miller was

still disqualified from service as a city driver, and Labor Relations Manager Boothe testified via affidavit that a driver can only be released back to his original board by Yellow Transportation upon a physician's finding of no further existing disqualification.  (Doc. # 39-2, Boothe Aff. ¶ 20.)  Any failure to require Miller to submit to an annual medical examination prior to January 2007 is irrelevant because the assumed failures did not maintain Miller on the list as of July 2007, the relevant date at issue.  Further, Boothe testified that "[a]lthough the applicable Columbus Seniority Practice provides that employees on a medical transfer are to be re-evaluated every twelve months, the seniority of an employee on a medical transfer is not affected in any manner if re-evaluations are not conducted or not conducted timely."  (Doc. # 39-2, Boothe Aff. ¶ 21.)  Lyon has presented no evidence to the contrary.  Thus, Lyon has failed to present a breach in the re-evaluation process that is relevant to his claimed injury.

Bolstering this necessary conclusion is the fact that Lyon's argument misconstrues the Columbus Seniority Practice rules.  Lyon argues that Miller should have been required to serve a year and a day at the bottom of the board.  This was not a requirement for medical transfers at the time in question, and there is no evidence supporting his conclusory contention that the medical transfer at issue was in fact a voluntary transfer carrying such a requirement.

Yellow Transportation also argues Lyon cannot demonstrate that the Union breached its duty of fair representation.  The Sixth Circuit has explained the elements of such a claim:

> To prove that a union has breached its duty of fair representation, a plaintiff must show that "the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in bad faith."  *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir.2003) (citing *Vaca*, 386 U.S. at 190).  A union's actions will be found arbitrary only if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational."  *Air Line Pilots Assoc., Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citations omitted) (quoting *Ford*

18

> *Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).  "To show bad faith, a plaintiff
> must show evidence of fraud, deceitful action, or dishonest conduct."  *Summers*,
> 133 F. App'x at 253 (citing *Humphrey,* 375 U.S. at 348).  "The courts have in
> general assumed that mere negligence, even in the enforcement of a collective-
> bargaining agreement, would not state a claim for breach of the duty of fair
> representation, and we enforce that view today."  *United Steelworkers of Am.,*
> *AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372-73 (1990).  Moreover "[a]ny
> substantive examination of a union's performance . . . must be highly deferential,
> recognizing the wide latitude that negotiators need for the effective performance
> of their bargaining responsibilities."  *O'Neill*, 499 U.S. at 78.

*Hayes*, 2009 WL 1405185, at *6.  In his briefing, Lyon states that he is not asserting that the

Union was discriminatory or withdrew his grievance out of any personal animus against him.

(Doc. # 52, at 3 n.1, 4 n.2.)  This leaves the issues of whether the Union acted arbitrarily or in

bad faith.

Lyon has failed to produce evidence suggesting that the Union acted in an arbitrary

manner or with bad faith in declining to pursue his breach-of-contract grievance.  There is no

requirement that the Union know and understand, much less approve, the substantive grounds

behind a driver's medical transfer.  As Wilson Raver, the Vice President of Local 413, testified

in his deposition, the Columbus Seniority Practice leaves the determination of the validity of a

driver's disqualification to the professionals, the examining physicians.  (Raver Dep. at 41.)

Thus, the Union should have known that Miller was under a medical transfer, which the

undisputed evidence shows it knew, and then acted appropriately.  Contrary to Lyon's

characterization of the Union's processing of his grievance, there was an investigation of the

grievance resulting in the Union's determination that it had no merit.  Even if a theoretical

intensive investigation could have been conducted as Lyon contends, the failure to do so does

not present a sufficient lapse so as to constitute a breach of the duty of fair representation in light

of the Union's understanding of the merits.  *See Garrison v. Cassens Transport Co.*, 334 F.3d

528, 540 (6th Cir. 2003) (" 'While we can imagine situations in which a union's failure to investigate might constitute substantial evidence of a breach, the mere failure to investigate, in itself, does not constitute a breach of the duty of fair representation.' " (quoting *Olsen v. United Parcel Serv.*, 892 F.2d 1290, 1295-96 (7th Cir. 1990))).

Raver additionally testified in his deposition that based on his review of the transcripts of and his knowledge of the change of operations and the Columbus Seniority Practice, he "knew there was no violation to the contract, and the company had committed no violation to the contract." (Raver Dep. at 14.) He also indicated that the Union knew Miller had been re-evaluated earlier in 2007. (*Id.* at 19-19.) Raver further testified that he had relied on "other similar cases" in withdrawing Lyon's grievance (*Id.* at 15), such a grievance by driver Al Becker and a grievance filed by driver Roman Witryk concerning Miller's transfer to Atlanta, which was also withdrawn by the Union for lack of merit (*Id.* at 16, 19-20). Raver explained the Union's belief as to why it perceived Lyon's grievance to be without merit: "Based on the Columbus seniority practice, Mr. Miller was on the proper seniority board based upon this practice. It was proper. He was on the seniority board at the time, executed his seniority according to the practice." (*Id.* at 25.)

Based on the foregoing, no jury could reasonably conclude that the Union's decision to withdraw Lyon's grievance was outside the permissible wide range of reasonableness so as to be wholly irrational. The Sixth Circuit has explained that, "[a]s a matter of law, there is no breach of the duty of fair representation where a union makes a good faith determination that a particular grievance is without merit, so long as some rational explanation is provided for the decision." *Smith v. Highland Park Fed'n of Teachers*, 833 F.2d 1013, 1987 WL 38242, at *2

(6th Cir. 1987) (unpublished table decision). Here, the Union had a specific understanding of the medical transfer process and the seniority practices involved, which gels with Yellow Transportation's understanding, and proceeded to treat Lyon's grievance accordingly and in essentially the same manner as it did similar grievances. The Union in fact proceeded with Lyon's grievance even a step further than it did with Witryk's grievance. Thus, even if the Union ultimately misconstrued the CBA to which it was a party, no reasonable juror could conclude on these facts that fraud took place, that misrepresentation occurred, or that the union acted in a wholly irrational manner or in bad faith. *See Williams v. The Kroger Co.*, 369 F.2d 85, 86 (6th Cir. 1996) ("There being no showing of bad faith or dishonesty of purpose on the part of the Union, appellants cannot recover against the Union under § 301 for its failure to process a grievance which it found to be without merit."); *Smith*, 833 F.2d 1013, 1987 WL 38242, at *3 ("[P]laintiff's allegation that the union failed to correctly interpret the collective bargaining agreement also misses the mark. Whether the union's interpretation of the contract ultimately proves to be correct or not is irrelevant. Absent bad faith or discriminatory animus, the union's failure to correctly identify the meaning of the contract provisions or the legal significance of its terms presents, at most, a claim for negligence.").

Moreover, contrary to Lyon's arguments otherwise, it does not matter for purposes of establishing a viable § 301 claim whether the Union lacked tact and professionalism in failing to inform Lyon personally that his grievance was going to be withdrawn. *See Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975) (noting that a union's negligence or exercise of poor judgment in failing to keep a member informed of the status of his grievance is insufficient to support a claim of unfair representation); *see also Kassab*, 54 F. App'x at 823-24

(citing *Whitten*).  What is ultimately Lyon's difference of opinion with the Union as to the operation and application of the seniority rules therefore does not present a viable breach-of-duty-of-fair-representation claim.  *See Moss v. Int'l Ass'n of Machinists & Aerospace Workers*, 996 F.2d 1216, 1993 WL 239057, at *6 (6th Cir. 1993) (unpublished table decision) ("It was inevitable that whatever decision the Union made, one of its members . . . was going to gain at the expense of the other.  The mere fact that it was plaintiff who was adversely affected by the actions or inactions of the Union does not establish that the Union acted with hostile or discriminatory intent.").

Even if this Court were to regard the Union's construction of those rules and consequent handling of Lyon's grievance and similar grievances as negligent, such decisionmaking by the Union would still not present a breach of duty.  *See Hayes*, 2009 WL 1405185, at *7 ("Nor do mistakes, errors, poor judgment, inadequate, or even negligent representation satisfy the arbitrary requirement for demonstrating a breach of the duty of fair representation.");  *Garrison*, 334 F.3d at 538 ("Mere negligence on the part of a union does not satisfy this requirement.  Moreover, ordinary mistakes, errors, or flaws in judgment also will not suffice." (citations omitted)); *Smith*, 833 F.2d 1013, 1987 WL 38242, at *3 ("Negligence . . . is insufficient to state a cause of action for failure to fairly represent union members.").

To recover against either an employer or a union under § 301 of the LMRA, a plaintiff must show that an employer breached a collective bargaining agreement *and* that the union breached its duty of fair representation.  Lyon can satisfy neither component of this claim.  Accordingly, this Court **GRANTS** summary judgment against Lyon not only on the hybrid § 301

claim, but also on his related claims.[4]

## C.  Lyon's Motion

In light of the discussion of Lyon's claims in reference to Yellow Transportation's motion for summary judgment (Doc. # 39), this Court naturally concludes that Lyon's own motion for partial summary judgment (Doc. # 40) is without merit based on the same reasoning. In addition to the substantive grounds already discussed, however, a second, independent reason supports denial of Lyon's motion.

As noted above in regard to the motion to strike, this Court's Local Civil Rules provide that "[a]ll Motions . . . shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation of authorities relied upon."  S.D. Ohio Civ. R. 7.2(a)(1).  Lyon's motion for partial summary judgment and memorandum in support, however, curiously cite to no legal authority in moving for summary judgment.  Although the briefing is replete with citations to various evidence, there are no references to the relevant statute, no reference to any case law, and even no reference to Rule 56 or the standard involved.  Similar to

---

[4]  As noted, Lyon's complaint asserts four claims: breach of the CBA against Yellow Transportation, breach of the duty of fair representation against the Union, the hybrid § 301 claim against both defendants under § 301 of the LMRA, and an intentional tort claim alleging malice and bad faith against the Union.  (Doc. # 2 ¶¶ 33-52.)  While acknowledging that more claims than the hybrid § 301 claim are technically involved in this litigation, the parties' briefing treats this case as turning upon analysis of the § 301 claim.  This Court agrees.  If there is no breach of the CBA to satisfy the hybrid § 301 claim, there is no breach to satisfy the purportedly separate claim for breach of contract.  Similarly, a failure to satisfy the breach of duty of fair representation component of the hybrid § 301 claim means that Lyon has failed to produce evidence or a genuine issue of material fact to survive the allegedly separate claims for the Union's asserted breach of duty of fair representation and intentional tort predicated upon the Union's claimed malice and bad faith.  Thus, under the parties' own construction of this case–reflected in the parties' overarching style of briefing the issues involved in various claims under essentially one analysis–the foregoing discussion proves dispositive of all of the claims involved in this action.

Lyon's motion to strike, his noncompliant, unsupported motion for partial summary judgment also warrants denial.  *See Jones*, 2008 WL 397466, at *1; *Miller*, 2007 WL 1098541, at *2; *Gregg*, 2005 WL 1514114, at *6; *Logan Farms*, 282 F. Supp. 2d at 796.  Also similar to his motion to strike briefing, the fact that Lyon's reply memorandum directs this Court to case law does not salvage the deficiency surrounding his motion and its memorandum in support; Local Rule 7.2(a)(1) does not permit a party to move for summary judgment by playing hide the ball in such a manner.

The Court **DENIES** Lyon's motion for partial summary judgment.  (Doc. # 40.)

### D.  Union's Motion

Similar to the discussion provided above, the Court must conclude that its analysis related to Yellow Transportation's motion for summary judgment (Doc. # 39) informs the disposition of the Union's motion for summary judgment (Doc. # 41).  The Court therefore **GRANTS** the Union's motion.  (Doc. # 41.)

### IV.  Motion for Sanctions

The last matter before the Court is a distasteful one: the Union's motion for sanctions against Lyon and his counsel pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the inherent power of this Court.  (Doc. # 73.)  This Court finds the motion well taken only in part.

Rule 11 provides in relevant part:

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

**(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

24

**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  The rule also provides that

[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.  Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11(c)(1).

Section 1927 in turn provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  The Sixth Circuit has explained that "[w]hile neither bad faith nor conscious impropriety is a prerequisite for sanctions under [this] provision[], *see Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986), the attorney's conduct must 'fall[ ] short of the obligations owed by a member of the bar to the court and . . ., as a result cause[ ] additional expense to the opposing party,' [*In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)]."  *Bawle v. Rockwell Int'l Corp.*, 79 F. App'x 875, 878 (6th Cir. 2003).  An example of conduct running afoul of the statute would be "where 'an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-

25

frivolous claims.' " *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (quoting *Jones*, 789 F.2d at 1230).  *See also Tareco Properties, Inc. v. Morriss*, 321 F.3d 545, 550 (6th Cir. 2003) (quoting *Jones*, 789 F.2d at 1230).  Inadvertent or negligent conduct are insufficient grounds for the imposition of sanctions.  *Shepherd*, 313 F.3d at 969 (citing *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)).

        In exhausting if not exhaustive briefing, the parties debate whether there was a factual basis upon which to bring this lawsuit, whether Lyon's counsel conducted sufficient factual investigation and legal research, and whether Lyon should have dismissed this action since its filing generally, and after an adverse result to Lyon before the National Labor Relations Board specifically.  Much of the parties' debate simply rehashes the arguments involved in their summary judgment motions, with Defendants asserting that Lyon and his counsel have ignored the facts and have either misconstrued to ignored the relevant law.  Lyon's counsel, who asserts in the briefing that he 'accepts full and sole responsibility for all legal actions taken on behalf of Plaintiff Lyon in this case," has submitted a detailed point-by-point brief in which he attempts to explain his legal theories behind and the actions undertaken in this litigation.  (Doc. # 78, at 1.) Some of this is a fairly close call, but with one inexcusable exception, the Court credits his explanations, which need not be reproduced here.  Portions of the asserted reasoning may be considered flawed or perhaps novel, but they do not rise to the level of sanctionable.  The parties' disagreements are often simply traditional disputes over what the evidence shows and how to apply the law.  The Court finds it disappointing that various counsel involved have engaged in such hostile attacks on one another, questioning one another's motives, intelligence, and professionalism when the docket reflects missteps by many of the attorneys involved in this

case.

Unfortunately, however, one component of this litigation does warrant sanctions.  As discussed above, Lyon's motion for partial summary judgment (Doc. # 40) failed to include any supporting authority whatsoever; it made no reference to any applicable rule, statute, or case law. Counsel for Lyon attempts to explain this curious choice in Lyon's memorandum in opposition to the motion for sanctions, explaining:

> Given that Plaintiff also planned to file a motion for partial summary judgment, the undersigned calculated that there would be a total of three separate dispositive motions, three memoranda contra, and three replies.  There would thus be nine different filings in which the respective counsel could argue the law applicable to the facts in this case.  Before arguing the law, Plaintiff felt it critical to first establish the essential facts of the case.

(Doc. # 78, at 17.)  Lyon's counsel later states that "[t]he purpose of Plaintiff's Motion for Partial Summary Judgment (Doc. 40) was to present the facts which proved breach of contract by Yellow and breach of duty of fair representation by the Union under [*Driver v. UPS*, 328 F.3d 863 (6th Cir. 2003)]."  (*Id.*)  He then proceeds to link case citations contained in the complaint and in his consolidated memorandum in opposition to Defendants' summary judgment motions with Lyon's motion for partial summary judgment, stating that together they "provide controlling legal authority for the relief sought . . . in [Lyon's] Motion for Partial Summary Judgment."  (*Id.* at 18.)  Lyon's counsel states that he "made a reasonable judgment that a sharp focus on the facts was the appropriate way to present Plaintiff's Motion for Partial Summary Judgment."  (*Id.*)

Lyon's counsel is incorrect; the disregard of a rule of court and the mandates of summary judgment practice is not strategy.  The joint purpose of a motion for summary judgment and its

memorandum in support is not simply to set up facts disputing another party's motion for summary judgment; a memorandum in opposition fulfills that purpose.  Rather, the shared purpose of a motion for summary judgment and its memorandum in support is to obtain summary judgment in whole in or in part by setting forth the relevant facts and law so that if nothing else is filed, a court may proceed to rule on whether *that motion as it is supported* entitles the movant to the relief requested *by and in that motion*.  This entails a "sharp focus on the facts" as Lyon's counsel suggests, but it also necessitates a sharp focus *on the law*.

Some courts have held that a mere failure to cite a contrary case or statutory provision is not sanctionable.  *See, e.g., United States v. Stringfellow*, 911 F.2d 225, 226 (9th Cir. 1990) (holding that counsel's failure to cite contrary authority, provided it does not render an argument frivolous, is not sanctionable under Rule 11); *see also Cummings v. Conglobal Indus., Inc.*, No. 07-CV-409-TCK-SAJ, 2008 WL 656000, at *2 n.2 (N.D. Okl. Mar. 6, 2008) (explaining limited nature of *Stringfellow* holding, which requires *some* citation to controlling legal authority).  But by intentionally holding back reference to *any* law from the motion and its supporting memorandum, Lyon's counsel elected to present this Court with a motion that the Court could not grant.  This Court is in the business of resolving the legal arguments presented to it, not in creating a party's inferred argument for him and then passing judgment on it.  Lyon's counsel thus multiplied the work of the Court and the parties by requiring the devotion of time and effort directed to a filing that is insufficient on its face, counting on the Court and the parties to take all of the summary judgment filings as a whole and infer the arguments his facts would or could

28

match.[5]  In so doing, Lyon's counsel violated the Local Civil Rules and rendered his client's motion for partial summary judgment a frivolous filing.  Although more substantive filings followed as the briefing on that motion concluded, these filings were ultimately pointless because the Court could not go back and grant the motion that started this line of briefing when *that* motion did not present a legal rationale or basis entitling Lyon to judgment.  The Court concludes that this conduct is sanctionable and in fact warrants the imposition of sanctions.  *See Gilreath v. Clemens & Co.*, 212 F. App'x 451, 464-65 (6th Cir. 2007) (affirming the imposition of Rule 11 sanctions where a plaintiff failed to cite any legal authority in support of his position); *Cummings*, 2008 WL 656000, at *1-2 (finding Rule 11 sanctions appropriate where there was no citation to controlling legal authority in a motion).

The Court therefore **GRANTS IN PART** and **DENIES IN PART** the Union's motion for sanctions.  (Doc. # 73.)  Pursuant to its inherent authority, Rule 11, and § 1927, and as a limited sanction that is designed to deter future conduct of the sort involved in the motion for partial summary judgment (Doc. # 40), the Court in its discretion reluctantly **ORDERS**:

(1) Lyon's counsel shall pay the Union its reasonably incurred fees directly resulting from defending against the motion for partial summary judgment (Doc. # 40).  *See* Fed. R. Civ. P. 11(c)(4).  Because the motion for sanctions unsuccessfully addressed substantially more than just the motion for partial summary judgment, the Court in its discretion declines to award to the Union its reasonable expenses incurred in association with the motion for sanctions.  *See* Fed. R.

_____

[5]  Recognizing that Lyon apparently sought to engage in this type of approach to summary judgment, the Court considered above evidence he filed in support of his own motion as evidence opposing Yellow Transportation's motion for summary judgment.  Assuming *arguendo* that such crossing of the briefing lines is permissible, the Court nonetheless recognizes that it is ultimately of no prejudice to any party even if in error given the outcome involved.

Civ. P. 11(c)(2).

(2) By June 29, 2009, the Union shall file an appropriately supported and sufficiently detailed request for fees related to the writing and filing of the memorandum in opposition (Doc. # 58) filed by the Union.  The Union may also include any additional time spent reviewing Lyon's motion for partial summary judgment (Doc. # 40) and his reply memorandum (Doc. # 59), as well as the memorandum in opposition (Doc. # 56) and sur-reply memorandum (Doc. # 72) filed by Yellow Transportation, if such time is not already included in work associated with the Union's memorandum in opposition.  None of this work would have been necessary but for the frivolous filing by Lyon, and the Union could have focused its time, efforts, and money solely on its own motion and related briefing.  Because much if not all of the research involved in the identified briefing overlaps or should overlap with research completed in association with the Union's own motion for summary judgment briefing, the Union may *not* recover for research time associated with the identified filings–only for time spent writing, reviewing, compiling exhibits, and filing.  In other words, the Union does not have a blank check to recover all its fees, but only a narrow portion of its reasonably incurred fees associated with one chain of filings. The Union is advised to restrict carefully its fee request accordingly, by erring on the side of excluding all questionable fees.

(3) By July 13, 2009, Lyon's counsel shall file a notice with the Court indicating whether he disputes the amount sought.  Said notice should not include argument but should simply state whether a dispute over the amount exists.  The Court encourages the parties to resolve the matter extrinsic to the Court, but in the likely event that no agreement as to the sanction amount is reached, the Court will upon a July 13, 2009 notice of dispute proceed to schedule the Union's

requested fees for an in-court hearing.

### V.  Conclusion

For the foregoing reasons, this Court **DENIES** Lyon's motion to strike (Doc. # 45),

**DENIES AS MOOT** Yellow Transportation's motion for an extension (Doc. # 49), **GRANTS**

Yellow Transportation's motion for summary judgment (Doc. # 39), **DENIES** Lyon's motion for

partial summary judgment (Doc. # 40), **GRANTS** the Union's motion for summary judgment

(Doc. # 41), and **GRANTS IN PART** and **DENIES IN PART** the Union's motion for sanctions

(Doc. # 73).  The relevant parties shall proceed on the matter of sanctions as indicated herein,

and the Court retains jurisdiction over this limited issue.

The Clerk is instructed to enter judgment accordingly and terminate this case upon the

docket records of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE
